a Memorandum. — In the vacation previous to this term, to wit: on the 22d of July, 1744, Judge Layton resigned his office of Associate Judge of the State; and the Hon. David Hazzard, of Sussex county, was on the 10th of December, appointed to succeed him.
THIS was an action of ejectment for fourteen acres of land, in Lewes and Rehoboth hundred, of which Thomas Rodney died seized.
Thomas Rodney, by his will, dated in 1817, devised to his brothers Daniel, Caleb and John Rodney, all his estate, real and personal, to them or the survivors of them, in trust and special confidence that they should immediately after his decease, make such division and disposition of the same as to a majority of them should seem equitable and right, agreeable to the laws of this State; subject to the two following exceptions and condition: 1st. That his daughter, Mary, while she continued under coverture or married to her then husband, William Robinson, should receive no part of his estate, and in case she should die before her aforesaid husband and leave issue by him, that the said trustees should hold that part of his estate, that his said daughter might be lawfully entitled to, for the said issue until he, she or they, might arrive at lawful age to receive it; but should such issue die before they came to lawful age, then that what they might be lawfully entitled to should descend to the said trustees,their heirs and assigns forever: and 2d., in case all hischildren and grand children should happen to die without leaving lawful issue, then that all his estate, both real and personal, should go to the aforesaid trustees, to them, their heirs or assigns in fee, and clear of any limitation or trust whatever."
Thomas Rodney at the date of said will had but one child, Mary Robinson, and several grand children, her issue. He married again in about one month after the date of the will, had issue, Ruth (defendant's wife,) and died. William Robinson died in August, 1825, when Mary Robinson, by permission of the trustees, went into possession of the premises in question, with other land of the said Thomas Rodney, and continued in possession until 1835, when she died *Page 184 
without issue. For several years after her death, the possession of the premises was doubtful; but had never been in the trustees under the will. About three years ago the defendant took possession as the husband of Ruth Rodney.
The plaintiff claimed title as the surviving trustee, under the will of Thomas Rodney.
The defendant resisted the claim on the following grounds: — 1st. That the legal estate in the premises was by implication devised to Mary Robinson on the death of her husband. (6 Cruise Dig. 122.) 2d. That the purposes of the trust being answered at the death of William Robinson, and Mary Robinson put in possession, the court would direct the jury to presume a conveyance to her of the legal title. (Fletcher on trust estates 19, [50;] Willis trust 92, 58, [124, n.;] Leigh N. P. 851-2; 8 C. L. Rep. 92; 5East 162; 1 Barn. Ald. 530; 2 T. Rep. 682; 4Ibid 682.) 3d. That defendant being in possession by the act of Daniel Rodney, and being, as a cestui que trust in possession, a tenant at will to the trustee, could not be turned out without notice of the termination of that will. (Willis Trusts 39, 40, [85.]
Houston, for plaintiff. — There is enough on the proof to show that the testator made his will in contemplation of a second marriage. He meant to secure the land to the children of his daughter, Mary Robinson, subject to a condition, that her husband should derive no benefit from it; and that her children by him should not take till they arrived at full age. He directs the trustees to divide it between M. Robinson's issue, and in case of the death of such issue under age, that it should descend to the trustees in fee; and if all her children and grand children should die, then all should go to the trustees in fee. If M. Robinson's children should live to twenty-one, they were to take as the cestui que trust under the will; if she survived her husband she was to take an estate for life by implication; if she died, her share was to be given up to them at twenty-one, being the portion the law would allow them.
Mary Robinson was entitled to no more than an estate tail on her husband's death; and she died without issue. The estate tail was spent, and the plaintiff is entitled under the will as the surviving trustee, discharged of the trust.
The defendant does not claim under Mary Robinson, and is not entitled to her share of the estate. He claims as the husband of Ruth, a child of Thomas Rodney, born after the date of the will, and under the second clause of the will, which gives all the estate to the *Page 185 
trustees on failure of children or grand children of the testator, or the issue of such.
Cullen, for defendant. — 1. The subsequent marriage and birth of a child is a revocation of the will. (1 Doug. Rep. 31; 4Barb. Har. Dig. 721; 2 Stark. Ev. 1287, 1615; 6Cruise Dig. 82, 114.)
2. The defendant is in possession by the act of Daniel Rodney, the trustee, who put Mary Robinson in possession after the death of her husband, and the defendant came into possession under her. A cestui que trust in possession is a tenant at will to the trustee, and cannot be turned out without notice. (Adams Eject. 104; Willis onTrustees 39, 40, 85.)
3. On the construction of the will. An heir at law is not to be disinherited unless by express words. The intention of the testator is to govern in the construction; and the situation and circumstances of the testator. (6 Cruise Dig. 122-3, [172;] 5 Pick. Rep.
528; Mass. Dig. 738.)
This will shows anger against Wm. Robinson, the son in law of Thos. Rodney. He meant not to injure his daughter and only child, but to exclude the son in law. How was he to effect this? He devised to his brothers in trust, to divide the property agreeably to the laws of the State; subject to these exceptions and condition:
1. That M. R. whilst the wife of Wm. R., should receive no part of his estate: if she should die before her said husband, having issue by him, the trustees were to hold her share for the issue until they should arrive at lawful age; if such issue should die before age, then to the trustees beneficially: but that case did not happen; he died first, she died without issue. The executory devise then to the brothers was on a contingency which never happened, and there was nothing for the trustees to take beneficially.
The second condition was in case all his children and grand children should die without lawful issue, he gave it to the trustees. He meant to punish the son in law by keeping him out of the property so long as he lived; for that purpose he devised it to the trustees to keep it from the wife whilst her husband lived; to keep it from her children by him whilst minors, for if they took it as minors, the father would get it: when they came of age these children were to have it all, or their mother's share; and if all his children andgrand children should die without issue, he gave it all to the trustees. But Thos. Rodney left another child by a subsequent marriage, which was in contemplation when the will was made. Was it his intention that these trustees should take any part of his land in preference to his *Page 186 
own child? Mary Robinson survived her husband; the trustees gave the estate up to her; she occupied it for ten years and died leaving no issue; having devised it. Ruth, the child of Thos. Rodney claims, and the question is whether T. R., meant to give the land to his brothers, in preference to his own' child.
The trustees ought not to recover because they, having surrendered to M. Robinson, a conveyance of the legal estate to her will be presumed. A court of equity would have compelled them to do it, and they will be presumed to have done it. (1 Cruise Dig. 332-3, 48-9; 13Johns. Rep. 513; 4 T. Rep. 082; 2 Ibid 684.)
The purposes of the trust being answered at the death of the husband of Mary Robinson; or at furthest, on her death without issue; the trust ceased, and the legal estate became vested in the only child of the testator under the devise to children. (Fletcher on Trustees'estates 19, 50.)
Houston, in reply. — 1. Marriage and birth of a child revokes only in cases where no provision is made for such child. Our act of assembly provides for the wife and subsequent child.
2. The intention of the testator was, that the share left to M. R., should, on the failure of her issue, go to his brothers, the trustees; and not to the testator's other children, if he should have any.
3. The doctrine of disinheriting the heir by implication does not apply, for these trustees, if they take at all, take by the express words of the will.
4. As to the estate which trustees will take: the claim here is not in character of trustees, for the purpose of a trust; but as devisees, clear of any trust.
5. No presumption of a surrender of the estate can be made in this case. That principle applies only to cases of actions by the cestius que trust against third persons, who set up the legal estate to defeat the action. It does not apply to actions between the trustee and cestui que trust. There is no proof that the defendant came into possession under Mary Robinson, and he did not take possession until after her estate ceased.
The case was now turned into a special verdict finding the facts before mentioned; upon which the Court gave judgment for the defendant, resting their judgment mainly upon the intention manifested on the will. It shows that the main object of the testator was to prevent his son in law, Wm. Robinson, from haying any portion or share of his estate. For this purpose he placed it in trust, and provided for several contingencies in reference to the trust, and for *Page 187 
one final contingency upon which it was to be so determined as to give the trustees the estate free and clear from the trust, and make them beneficially interested in it. That contingncy was the death ofall the testator's children and grand children;
without issue, which did not happen. The settled rule is, that the intention must prevail; and the court thought the intention was here manifest, that the testator did not mean to give any portion of his estate to the trustees whilst he had children or grand children, or their issue living. There was good reason for continuing the legal estate in the trustees on the failure of issue of Mary Robinson, for that might have happened in the lifetime of Wm. Robinson, which would have given him a life estate without such provision, and this would have defeated the main, if not the sole, object of the will.
The case was afterwards taken to the Court of Appeals where this judgment was, after argument, affirmed by that court, on the same grounds.